

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 19, 2025

**BY ECF**
The Honorable Mary Kay Vyskocil
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re:  *United States v. Ferdinan Quinones*, 24 Cr. 364 (MKV)

Dear Judge Vyskocil:

  The Government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for August 26, 2025. On March 13, 2025, Ferdinan Quinones, the defendant, pleaded guilty to conspiracy to distribute and possession with intent to distribute a controlled substance, namely, cocaine base, in violation of Title 21, United States Code, Sections 841(a)(l), 841(b)(1)(C) and 846, in connection with his participation in a drug conspiracy that sold kilogram-quantities of crack cocaine near the intersection of 157th Street and Gerard Avenue in the Bronx, New York.

  As explained below, the Government recommends a sentence of 72 months' imprisonment, which is well-below Guidelines, followed by 3 years of supervised release. The Government's recommended sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

  I.  **Offense Conduct and Procedural History**

  From at least 2023 up to and including at least 2024, a confidential witness ("CW-1") bought marijuana and crack cocaine from a group of drug dealers that included the defendant (the "157th Street Group") near the intersection of 157th Street and Gerard Avenue. (PSR ¶¶ 12-13.) CW-1 purchased drugs from the defendant, in particular, approximately 20 times in or about 2023. (PSR ¶ 13.) CW-1 estimated that the defendant sold CW-1 at least four vials of crack cocaine on each of those occasions. (*Id.*)

  On January 5, 2024, officers from the New York City Police Department were driving near the intersection of 157th Street and Gerard Avenue and noticed the defendant driving southbound on the street on a scooter. (PSR ¶ 15.) When officers stopped their vehicle and opened the driver-side door, the defendant fell onto the street, stood, and proceeded to flee from the officers on foot. (*Id.*) While attempting to flee, the defendant again fell to the ground, and two loaded firearms—a black revolver with a brown handle and a black semi-automatic handgun—fell out of his waistband. (PSR ¶ 16.) Officers seized both firearms, as well as four small clear plastic bags

containing approximately 1.5 grams of a white substance that later tested positive for the presence of cocaine and one small plastic vial containing approximately .1 grams of a substance that later tested positive for the presence of cocaine base. (PSR ¶¶ 16-17.)

A search of the defendant's cellphone, which was seized incident to his January 5, 2024 arrest, further confirmed that the defendant was engaged in narcotics trafficking. In particular, law enforcement officers found multiple messages on his cellphone in which he discussed the distribution of controlled substances, including crack cocaine, with co-conspirators. (PSR ¶¶ 17-18.) The search of the defendant's cellphone also revealed indications that the defendant was engaged in firearms trafficking. For example, on December 18, 2023, the defendant sent a photograph of two black semiautomatic handguns to one of his contacts and asked which one the contact wanted to purchase and said, among other things, "I got them with me siempre." (PSR ¶ 19.)

On June 6, 2024, a Grand Jury returned a three-count indictment charging the defendant with one count of conspiracy to distribute narcotics in violation of Title 21, United States Code, Section 846, one count of distribution of narcotics in violation of Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(C) (Count One), and one count of firearms use, carrying and possession in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2 (Count Two). (PSR ¶¶ 1-4; *see* Dkts. 6-7.) On March 13, 2025, the defendant plead guilty pursuant to a January 30, 2025 plea agreement (the "Plea Agreement") to Count One of the indictment. (*See* Dkt. 26.)

In the Plea Agreement, the parties agreed that a base offense level of 32 was the correct base offense level under U.S.S.G.§§ 2D1.1(a)(5) and 2D1.1(c)(4) because the offense involved a quantity of cocaine base of at least 840 grams but less than 2.8 kilograms. (Plea Agreement at 2.) After applying a two-point enhancement for the defendant's possession of a dangerous weapon, and a three-point reduction for the defendant's acceptance of responsibility, the parties agreed that the total offense level was 31, the defendant was in Criminal History category I, and that the defendant's stipulated Guidelines range, therefore, was 108 to 135 months' imprisonment (the "Stipulated Guidelines Range"). The parties further agreed in the Plea Agreement, however, that consistent with the then-operative Department of Justice policy, the Government would ask the Court to consider, as part of its 18 U.S.C. § 3553(a) analysis, the Guidelines range for powder cocaine rather than crack cocaine. (Plea Agreement at 3.) Considering the Guidelines range for powder cocaine instead, the base offense level would be 24, and the resulting advisory Guidelines range would be 46 to 57 months' imprisonment. (*Id.*) The Probation Department agreed with the parties' various calculations in the plea agreement and recommended a downward variance from the Stipulated Guidelines Range to 60 months' imprisonment.

## II.  Discussion

### A.  Applicable Law

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory. Thus, while a district court must "consult" the Guidelines and "take them into account" when fashioning a sentence, *id.* at 264, the Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). After calculating

the Guidelines, courts must "consider all of the § 3553(a) factors" and "make an individualized assessment based on the facts presented." *Id.* at 49–50.

The seven factors outlined in 18 U.S.C. § 3553(a) are: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); (iii) "the kinds of sentences available," *id.* § 3553(a)(3); (iv) the Guidelines range itself, *see id.* § 3553(a)(4); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

The statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, pursuant to which the sentence needs:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2).

### B. The Court Should Impose a Sentence of 72 Months' Imprisonment

The Government respectfully submits that the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) weigh in favor of a sentence of 72 months' imprisonment—a sentence that falls well below the Stipulated Guidelines Range. The factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to afford adequate deterrence to this defendant and others, and to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A)-(C).

As the defense acknowledges, the offense conduct is "no doubt, very serious," "entails the defendant having contributed to the spread of dangerous, habit-forming, drugs in the community," and "warrants serious consequences." (*See* Dkt. 35 ("Def. Br.") at 2-3.) The defendant worked with co-conspirators in the large-scale distribution of highly addictive substances, which lead to devastating illness, destabilize communities, and fund vicious criminal organizations. For this reason, major drug crimes are among "the most serious" offenses proscribed by federal law. *United States v. Dillard*, 214 F.3d 88, 101 (2d Cir. 2000); *see also United States v. Colon*, No. 10 Cr. 197 (CM), 2020 WL 4496761, at *2 (S.D.N.Y. Aug. 4, 2020) (describing cocaine as "a highly addictive drug that destroys lives, families, and communities"). By selling large quantities of narcotics for at least a year, members of the 157th Street Group, including the defendant, put the surrounding community at risk, feeding a cycle of addiction for their personal profit. The defendant's conduct was selfish, dangerous, and deserving of a significant term of incarceration.

In addition to injecting serious, habit-forming drugs into the community, the defendant also appears to have been engaged in the unlicensed sale and unlawful possession of firearms. The

unlicensed sale of firearms is extremely serious conduct because it inserts unregistered and illegal weapons, which can lead to the proliferation of violence, into our communities. The seriousness of the defendant's drug and gun trafficking is aggravated by the fact that he appears to have combined the two by carrying multiple loaded firearms near the corner of 157th Street and Gerard Avenue, where the 157th Street Group engaged in the trafficking of narcotics. Drug trafficking is a dangerous, high-profit venture. Drug traffickers have an interest in defending their turf—and therefore their profit—and often do so with gun violence. The defendant's possession of two loaded firearms at the very location where he and the rest of the 157th Street Group trafficked narcotics, indicates his intent, or at least his willingness, to do just that.

In sum, the defendant's conduct—trafficking particularly dangerous drugs, exacerbated by the sale and carrying of firearms—supports imposing the 72-month sentence that the Government recommends.

Furthermore, in this case, specific deterrence is critical. Although this is the defendant's first criminal conviction as an adult, the charges here do not represent a singular lapse in judgment or one-time poor decision-making. The defendant's drug trafficking activities were sustained over the period of many months, as evidenced by the fact that CW-1 bought drugs from the defendant on at least 20 separate occasions. The defendant has also had prior brushes with law enforcement related to violence that have not deterred him from criminal conduct. Indeed, he was arrested on October 11, 2023 for allegedly slashing a victim in the face with a box cutter mere blocks from the intersection of 157th Street and Gerard Avenue. (PSR ¶ 42.) The defense contends that the defendant's October 2023 arrest and the criminal conduct at issue in this case all stemmed from a traumatic incident in May 2023 in which the defendant was the victim of a stabbing. (*See* Def. Br. at 11.) The defense's position is that this May 2023 incident led to a "downward spiral" in the defendant's life, which coincided with his criminal conduct. (*See* Def. Br. at 7-8.) But the defendant's brush with law enforcement in October 2023 could have marked a turning point in his so-called "downward spiral" into criminal activity. Unfortunately, it did not, and the defendant continued to engage in serious criminal conduct that endangered the community. Accordingly, a serious sentence is needed here to deter the defendant from future misconduct.

Lastly, the defendant's sentence also presents an opportunity to promote general deterrence and respect for the law. In this case, the defendant was distributing narcotics with several other individuals who all sold narcotics at the intersection of 157th Street and Gerard Avenue. Given that other individuals who know and interact with the defendant are engaged in this criminal conduct, there is a chance that others engaged in drug trafficking activities in the area will learn of the sentence imposed in this case and will take it into account when deciding whether to continue trafficking narcotics in the Bronx. The Court should impose a sentence that sends the right message of deterrence to all those individuals: Trafficking in deadly drugs is not a risk-free enterprise and will lead to a substantial term of imprisonment.

The Government acknowledges that there are mitigating factors here with regard to the history and characteristics of the defendant (e.g., the defendant's youth and difficult upbringing), but its recommended sentence—which is four years below the bottom of the Stipulated Guidelines Range—properly accounts for them and balances them with the other factors outlined in 18 U.S.C. § 3553(a).

### III.  Concluson

For the reasons set forth above, the Government submits that a sentence of 72 months' imprisonment is necessary and appropriate in this case.[1]

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: *Ariana Bloom*
Ariana L. Bloom
Georgia V. Kostopoulos
Assistant United States Attorneys
Southern District of New York
(212) 637-2578/2324
Ariana.Bloom@usdoj.gov

cc: David Cohen, Esq. (via ECF)

---

[1] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b).  *See, e.g., United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).